# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Janardhan Nellore<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)<br>)<br>)<br>) |

**FILED**
MAY 09 2019
SUSAN Y SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

CR 19 70712 MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 26, 2018__ in the county of __Santa Clara__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

This criminal complaint is based on these facts:

Please see attached affidavit of FBI Special Agent Adelaida Hernandez.

☑ Continued on the attached sheet.

Approved as to form _____
AUSA Patrick Delahunty

*Complainant's signature*
FBI Special Agent Adelaida Hernandez
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 9, 2019 4:50pm

*Judge's signature*

City and state: San Jose, California

Nathanael Cousins, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT PRESENTED IN SUPPORT OF A CRIMINAL COMPLAINT

I, Adelaida Hernandez, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby declare as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is presented in support of a criminal complaint charging **Janardhan NELLORE** with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 1832.

3. I have been employed as a Special Agent of the Federal Bureau of Investigation since February 2016, and am currently assigned to the San Francisco Division. While employed by the Federal Bureau of Investigation, I have investigated have investigated white-collar crime. I have gained experience through training at the Federal Bureau of Investigation and everyday work relating to conducting these types of investigations. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

4. During my career as a Special Agent of the FBI, I have received training and possess actual experience relating to Federal criminal procedures and Federal statutes. I have also received specialized training regarding financial crimes.

5. The facts in this affidavit are based on my personal participation in this investigation, my training and experience, and documents, records, emails, and other types of information obtained

1

during the investigation from other sources and witnesses. Thus far, the FBI has far examined documents (including bank records), conducted interviews, and reviewed documents obtained by a related investigation of **Janardhan NELLORE**, and other stock traders, conducted by the United States Securities Exchange Commision ("SEC"). Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that violations of U.S. law occurred. Also, where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, and figures and calculations set forth in this complaint are approximate, unless otherwise noted.

## APPLICABLE STATUTES

6. The FBI is investigating alleged violations of Title 18, United States Code, Section 1028A, which states in part:

> Whoever... knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law...

7. Additionally, the FBI is investigating alleged violations of Title 18, United States Code, Section 1343, which states in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Entities

8. At all relevant times, Palo Alto Networks, Inc. ("PANW") was a publicly traded cloud-computing security firm located at 3000 Tannery Way, Santa Clara, California. PANW is a global company with locations in over 40 countries. PANW uses network, cloud-based, and endpoint security with threat intelligence to prevent cyber threats and cyber breaches of their customer's valued data assets. Like most publicly traded companies, PANW must report financial performance metrics and other news relevant to the value of the company.

9. At all relevant times, Ally Financial, Inc. (hereafter "Ally") was a financial service company and brokerage. Such companies facilitated the buying and trading of securities, including stocks and stock options. Representatives for Ally indicated in response to inquiries relating to this investigation that Ally maintained servers in New Jersey and Texas since 2016. Since 2016, any stock trade or transfer of funds conducted using an Ally account would have been processed by sending interstate wires and signals to Ally's servers in New Jersey and Texas.

Individuals

10. At all relevant times, Janardhan NELLORE ("NELLORE") was employed by PANW as a "Senior SAP BASIS," which I understand to be comparable to a software engineer. NELLORE had a management position within the Operations and Support group (comparable to an IT department) at PANW beginning no later than 2015. NELLORE was employed by PANW since 2012. NELLORE was a resident of Santa Clara, California. NELLORE had the ability to access PANW financial performance information used by PANW to announce quarterly earnings since at least 2015, and at various times in his employment at PANW he has also had the ability to grant others such access. In or around February 2018, NELLORE controlled the phone

3

number xx3634.

11. Individual-1 was an acquaintance of NELLORE. Beginning no later than March 2011, Individual-1 opened an account at Ally ending xx9008 and controlled the account thereafter.

12. At all relevant times, Individual-1 controlled the phone number xxxxx6, was born on XXXX 7, 19XX, and had a social security number ending in xxxxx0.

### PANW RESTRICTS ITS EMPLOYEES FROM TRADING PANW STOCK DURING "BLACKOUT" PERIODS

13. Publicly traded companies commonly impose a restriction on the trading of the company's stock by their employees for a time period before and after a quarterly earnings announcements. These restrictions create what are frequently called "blackout" periods. PANW had blackout periods. During a blackout period, PANW employees could not, according to PANW company policy, trade PANW stock—regardless of why they are trading it.

14. Below, I outline some recent PANW blackout periods[1]:

| Quarter | Blackout Periods |
| --- | --- |
| 4th Quarter 2015 | 10/12/2015 to 11/25/2015 |
| 1st Quarter 2016 | 01/11/2016 to 02/29/2016 |
| 2nd Quarter 2016 | 04/11/2016 to 05/31/2016 |
| 3rd Quarter 2016 | 07/11/2016 to 09/01/2016 |
| 4th Quarter 2016 | 10/10/2016 to 11/23/2016 |

---

[1] In approximately the Fourth Quarter of 2017, PANW implemented a blackout policy that had two different windows, one longer than the other. In the table presented here, I have referenced only the shorter window, which I understand as being applicable to all employees.

4

| 1st Quarter 2017 | 01/09/2017 to 03/02/2017 |
| --- | --- |
| 2nd Quarter 2017 | 04/10/2017 to 06/02/2017 |
| 3rd Quarter 2017 | 07/10/2017 to 09/05/2017 |
| 4th Quarter 2017 | 10/31/2017 to 11/22/2017 |
| 1st Quarter 2018 | 01/31/2018 to 02/28/2018 |
| 2nd Quarter 2018 | 04/27/2018 to 06/06/2018 |
| 3rd Quarter 2018 | 07/30/2018 to 09/10/2018 |
| 4th Quarter 2018 | 10/30/2018 to 12/03/2018 |

15. Notwithstanding these blackout periods, NELLORE used his own brokerage account to trade PANW stock during a handful of blackout periods. Specifically, he used his own brokerage account to make PANW trades during the blackout periods for the following quarters: 4Q 2016, 1Q 2017, 2Q 2017, 2Q 2018. Notably, NELLORE did not use his brokerage account to trade during the remaining blackout periods.

### USE OF INDIVIDUAL-1'S BROKERAGE ACCOUNT

16. FBI agents interviewed Individual-1 twice.

17. During the course of both interviews, Individual-1 asserted that he allowed NELLORE to access Individual-1's brokerage accounts and to allow NELLORE to make trades of PANW stocks while using Individual-1's brokerage account. Individual-1 asserted that he knew this was improper. Individual-1 also asserted that he understood that one reason NELLORE used Individual-1's brokerage account to trade PANW stocks was to allow NELLORE to circumvent PANW's blackout period restrictions.

## IP ACTIVITY IS CONSISTENT WITH INDIVIDUAL-1'S EXPLANATION

18. Based on my training and experience, as well as my review of business records obtained from certain Internet Service Providers ("ISPs") in the course of my investigation, I have learned the following:

   a. An IP address is a unique numeric address used by computers, smartphones, and other electronic devices on the Internet. An IP address looks like a series of numbers, each in the range 0 through 255, separated by periods or colons (e.g., 123.45.67.100). Every device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. Most ISPs control a range of IP addresses. Some devices are assigned static (i.e., long-term) IP addresses while other devices are assigned dynamic (i.e., frequently changed) IP addresses.

   b. PANW hosts a local or internal network that utilize IP addresses to route internet traffic through PANW hosted servers to the desired internal and/or external destination.

   c. According to PANW's Chief Accounting Officer, who was interviewed by the FBI for purposes of this investigation, PANW's internal network is designed to only provide access to PANW employees and contractors. One step that PANW took to limit access within its internal network was to assign a username and password to anyone that had authorized access to the network.

19. Internal networks, such as PANW's internal network, in my experience, are not available

to the general public. Internal networks are generally utilized by employees or contractors of the company. It would not be typical for a trader to access and conduct options trading from their brokerage account via an internal network unless they are employed or have been granted access to the network.

20. The IP address 199.167.55.50 was an internal PANW IP address. Brokerage accounts owned by NELLORE and Individual-1 were accessed via this IP address. The brokerage accounts of Individual-1 had trading activity utilizing this IP address. Individual-1 was not employed by PANW at the time of these trades.

21. The IP addresses 199.167.55.229 and 199.167.52.5 were internal IP addresses assigned to PANW. Brokerage accounts owned by NELLORE and Individual-1 were accessed via these IP addresses. The brokerage accounts of NELLORE and Individual-1 had trading activity utilizing these IP addresses. Individual-1 was not employed by PANW at the time of these trades.

### BROKERAGE RECORDS ARE CONSISTENT WITH INDIVIDUAL-1'S EXPLANATION

22. Brokerages commonly record phone calls received by the brokerage. I have reviewed and listened to phone calls recorded by Ally and associated with Individual-1's brokerage account.

23. When interviewed, Individual-1 was asked to listen to a call on February 8, 2018 that was initiated from the phone number ending xxxxx6 (Individual-1's phone number). In the call, two voices speak to an Ally representative. Individual-1 confirmed that one voice was his and one voice was NELLORE's. On May 7, 2019, NELLORE was interviewed. He was also asked to listen to the February 8, 2018 recording. After he heard Individual-1's voice, NELLORE asserted that it was Individual-1. But, when NELLORE heard the second voice, NELLORE

7

could not identify the caller. The agents conducting the interview informed me that NELLORE's demeanor was notably different after the recording was played.

24. On or about February 26, 2018, NELLORE called Ally from NELLORE's phone number ending xx3634 and impersonated Individual-1. NELLORE asserted that he was Individual-1, that NELLORE (although impersonating Individual-1) was born on XXXX 07, 19XX, and that NELLORE (although impersonating Individual-1) had an account at Ally ending xx9008.

25. During the call, NELLORE placed an order, while using Individual-1's brokerage account and asserting he was Individual-1, to open 35 PANW option contracts (an option trade commonly corresponds to 100 shares of the underlying stock). The contracts were all call options, with a limit of $9.00, with a strike price $167.50, and with an expiration date of March 23, 2018. In sum, this trade cost approximately $31,500 to place.

## **NELLORE AND INDIVIDUAL-1 STRUCTURED CASH DEPOSITS AND WITHDRAWALS WHEN TRANSFERRING MONEY RELATED TO PANW TRADING**

26. During his second interview, Individual-1 was asked who provided the funds to support NELLORE's trades of PANW in Individual-1's brokerage account. Individual-1 indicated that NELLORE would commonly provide money to Individual-1 to fund the trades before they were placed, and when the trades were successful, money would be transferred by Individual-1 back to NELLORE.

27. When money was transferred between Individual-1 and NELLORE for purposes of the PANW stock trades, Individual-1 and NELLORE would commonly deposit and withdraw cash from their bank accounts in amounts less than $10,000. Individual-1 asserted he did this to avoid bank reporting requirements, and Individual-1 asserted that he understood NELLORE also did this to avoid bank reporting requirements.

## BROKERAGES WILL NOT PLACE STOCK TRADES UNLESS THE ACCOUNT HOLDER MAKES THE TRADE

28. Through my training and experience as an FBI Agent I understand that brokerage accounts, including Ally, will not place or execute trades if the individual identifying themselves as the client/account holder is not the actual client/account holder.

## NELLORE ATTEMPTED TO LEAVE THE UNITED STATES THE DAY AFTER HE WAS INTERVIEWED

29. NELLORE was interviewed by the FBI for purposes of this investigation on May 7, 2019. Sometime after the interview, NELLORE purchased one way tickets on Air India for him and his family on a flight to New Delhi, India departing on May 8, 2019 at 11:30 am. FBI agents intercepted him while he was trying to board the flight.

## CONCLUSION

30. Through my training and experience as an FBI Agent, I believe that NELLORE's use of Individual-1's means of identification were for an unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law, to wit Wire Fraud in violation of Title 18, United States Code, Section 1343.

31. Based upon the foregoing, my training and experience, and the training and experience of agents and investigators involved in this investigation, I believe that there is probable cause to believe that NELLORE has committed the crime of aggravated identity theft, in violation of Title 18, United States Code, Section 1028A.

ADELAIDA HERNANDEZ
Special Agent
Federal Bureau of Investigation

Sworn to before me this ___ day of May 8, 2019.

May 8, 2019 4:50pm

HONORABLE NATHANAEL M. COUSINS
United States Magistrate Judge

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT  ☐ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1028A- Aggravated Identity Theft

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 2 years imprisonment—mandatory;
$250,000 fine;
One year of supervised release; and
$100 special assessment

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

FILED MAY 09 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**DEFENDANT - U.S**
▶ Janardhan Nellore

**DISTRICT COURT NUMBER**
CR 19 70712 MAG

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
FBI Special Agent Adelaida Hernandez

☐ person is awaiting trial in another Federal or State Court, give name of court
_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District
_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
SHOW DOCKET NO. _____

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO. _____

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under _____

Name and Office of Person Furnishing Information on this form  DAVID L. ANDERSON
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  Patrick Delahunty

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction  } ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
_____

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT  Bail Amount: None

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:
_____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____  Before Judge: _____

Comments: